IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEVEN A. GARDNER, CW-3809, )
    Petitioner, )
     )
    v. ) Civil Action No. 07-1164
     )
COM. OF PENNSYLVANIA, et al., )
    Respondents. )

Report and Recommendation

I. Recommendation:

It is respectfully recommended that the petition of Steven A. Gardner for a writ of habeas corpus be dismissed and that a certificate of appealability be denied because no viable constitutional issues exists upon which a reasonable jurist could conclude that there is a basis for appeal.

II. Report:

Steven A. Gardner, an inmate at the State Correctional Institution at Somerset has presented a petition for a writ of habeas corpus which he has been granted leave to prosecute in forma pauperis.

Garden is presently serving a life sentence imposed following his conviction, by a jury, of first degree murder at No. 219 of 1995 in the Court of Common Pleas of Butler County, Pennsylvania. This sentence was imposed on October 23, 1995.[1]

---

[1] See: Petition at ¶¶ 1-8.

1

An appeal was taken to the Superior Court of Pennsylvania in which the issues presented were:

> A. Was the verdict finding the defendant guilty of first degree murder improper as it was not supported by the weight and sufficiency of the evidence as to the element of specific intent?
>
> B. Was the jury instruction regarding the deadly weapon presumption improper as it removed the distinction between first-degree murder and third-degree murder?
>
> C. Was it error for the court to instruct the jury pursuant to Pennsylvania suggested standard criminal jury instruction 3.09 which states that in the weighing of a defendant's testimony, the jury could consider the fact that he has vital interest in the outcome of the trial?[2]

On August 20, 2000, the judgment of sentence was affirmed.[3] Leave to appeal was denied by the Pennsylvania Supreme Court on January 22, 2001.[4]

A pro-se post-conviction petition was executed on February 12, 2001.[5] That petition was denied on March 9, 2004.[6] An appeal to the Superior Court was filed in which counsel adopted the following issues raised by the petitioner:

> I. Did the P.C.R.A. petitioner state enough meritorious facts to adequately show (by a preponderance of evidence) that he deserves (at the very least) a new trial or other applicable relief?
>
> II. If so, is the lower court judge failing to acknowledge how and why petitioner/defendant deserves (at the very least) a new trial)?

---

[2] See: Exhibit 8 to the answer.

[3] See: Exhibit 12 to the answer.

[4] See: Exhibit 13 to the answer.

[5] See: Exhibit 13 to the answer.

[6] See: Exhibit 18 to the answer.

III. Was it prejudicial for the P.C.R.A. judge (in concert) with the assistant district attorney and/or assigned counsel to abruptly "cut-off" petitioner when he tried to present his supportive exhibits/evidence?

IV. Did the P.C.R.A. judge (in concert) with (court-appointed) assigned counsel fail to afford petitioner/defendant with A: Full and Fair evidentiary hearing on his post-conviction?

V. Did the lower court judge improperly deny petitioner's claim of deficient/defiant assistance of assigned counsel (without hearing) on the matter and therefore, isn't a remand for a hearing on the matter in order?

VI. As the petitioner/defendant avers to that the lower court's hearing transcripts (records) have discrepancies and deletions, are further proceedings merited in the lower court (beforehand) an appeal to this court?

VII. Did the lower court judge abuse discretion in any or all P.C.R.A. processes or proceedings?

VIII. As this honorable court's/honorable panel's "eyes are open" and is not bound by law to agree with or affirm the lower court's denials, does petitioner/appellant state and depict enough facts, arguments, exhibits of support and evidence to show that he deserves relief upon his case (at the very least) a new trial?[7]

On March 21, 2006, the Superior Court affirmed the denial of post-conviction relief.[8] On May 8, 2006, that decision was withdrawn and reargument granted with leave to file supplemental briefs.[9] The petitioner filed a supplemental brief which counsel adopted in which the issues raised were:

A. Actual innocence.

B. Trial counsel was deficient/defiant towards properly representing defendant at his trial constituting ineffectiveness:

---

[7] See: Exhibits 22 and 27 to the answer.

[8] See: Exhibit 28 to the answer.

[9] See: Exhibit 30 to the answer.

    1. Defendant circumvented from attorney presence during police interrogation.

    2. Counsel failed to use affirmative defenses applicable to defendant's case of self-defense.

    3. Negligence on part of the victim.

    4. Lack of character witnesses at trial.

    5. Failed to use favorable evidence at trial.

    6. Counsel failed to inform petitioner of plea bargain.

    7. Failure to object to photographic evidence.

    8. Failed to use two major theories to negate malice.

    9. Counsel failed to request all applicable jury instructions.[10]

On October 24, 2006, the Superior Court again affirmed the denial of post-conviction relief.[11] A petition for allowance of appeal to the Pennsylvania Supreme Court was filed in which the sole question presented for review was:

> Did the Pennsylvania Superior Court misapply the legal principle regarding ineffective assistance of counsel after admitting in the body of its Memorandum Opinion that P.C.R.A. counsel's failure to procure trial counsel at a P.C.R.A. hearing had no reasonable basis, that appellant was prejudiced by the fatal failure, admitting by default that the claim had merit, but then deny appellant's ineffective assistance claim?[12]

On May 18, 2007, leave to appeal was denied.[13]

---

[10] See: Exhibits 31 and 32 to the answer.

[11] See: Exhibit 34 to the answer.

[12] See: Exhibit 35 to the answer.

[13] See: Exhibit 36 to the answer.

In the instant petition, executed on August 24, 2007, Gardner contends he is entitled to relief on the following grounds:

A. Innocent of the crime of first degree murder.

B. Ineffective assistance of counsel in that counsel failed to present available witnesses and favorable evidence.

C. Prejudicial delays.

D. No coroner's inquest.

E. Inadequate jury instructions in failing to instruct on involuntary manslaughter.

F. Police prevented him from conferring with counsel while in custody; police contaminate/tampered with evidence; police presented perjured testimony and failed to collect evidence.

G. Prosecutorial misconduct in presenting perjured testimony, suppressing evidence, failure to prove motive and failed to prove malice.

H. Trial and P.C.R.A. court failed to acknowledge issues of merit that would warrant a new trial.

I. Denial of DNA testing.

J. Insufficiency of the evidence for a first degree murder conviction.

K. All court appointed counsel were defective.

L. Appellate courts ignored meritorious issues warranting a new trial.

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that

before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000), the Court determined:

> The Court in Williams v. Taylor held that "[u]nder the 'contrary to' clause, a

6

federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, further held that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Thus, under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." The Court in <u>Williams v. Taylor</u> made it clear that the "contrary to" and "unreasonable application" clauses have independent meaning.

In the instant case, it is apparent that several of the issues which the petitioner seeks to raise here have never been presented to the appellate courts of the Commonwealth for their consideration in the first instance. Those issues are prejudicial delays, lack of a coroner's inquest, inadequate jury instructions on involuntary manslaughter, lack of ability to consult counsel due to actions of the police, prosecutorial misconduct, acknowledgment of merits of granting a new trial by the Pennsylvania appellate courts, lack of DNA evidence, and failure of the appellate courts to address meritorious issues warranting a new trial. In <u>Coleman v. Thompson</u>, 501 U.S. 722,750 (1991), the Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of miscarriage of justice.

Since the petitioner is barred from raising these issues in the state courts, and he has failed to demonstrate good cause for failing to raise them in the state courts in the first instance, or that a

fundamental miscarriage of justice would result from failure to considered those issues, he is procedurally barred from raising them here.

Thus, the only issues which the petitioner seeks to raise here which he may have raised in the appellate courts of the Commonwealth are those of his actual innocence of first degree murder; ineffective assistance of counsel for counsel's failure to present available witnesses and favorable evidence and the insufficiency of the evidence to support a conviction of first degree murder.

It a Memorandum filed on August 29, 2000, the Superior Court, quoting an opinion of the trial court, set forth the record factual background:

> [Victim] Robert Steward rented a room and storage space from the Defendant from sometime in late December 1994 until January 10, 1995 when Defendant shot and killed him. On January 10, 1995, Robert Stewart came home at approximately 11:30 p.m. Shortly before 11:44 p.m., Mr. Richard Kern called the Defendant's residence. Mr. Kern made the call via the *69 feature allowing return call. Mr. Kern had made the call in response to a harassing call he had just received from what came to be known as Defendant's residence. Defendant answered Mr. Kern's call; however, Mr. Kern remained silent and eventually hung up because he did not recognized Defendant's voice as that of the harassing phone call. At approximately 11:44 p.m., Defendant called Mr. Kern via the *69 feature. The two men began talking and ultimately discovered that a harassing phone call had originated from Defendant's residence to Mr. Kern, resulting in the subsequent *69 calls. While on the phone, Mr. Kern heard Defendant yell something to the effect of, I'm sick of this!; Get out!; I want you the hell out now!. The phone then emitted a buzzing sound as if it went dead rather than being hung up. Thereafter, Defendant shot Robert Stewart and dragged his body down a hallway to a door allowing ingress and egress from the home. At approximately 11:51 p.m. Defendant called 911. Defendant informed the operator that he had just shot his tenant and that he needed an ambulance. The 911 operator patched through to the Pennsylvania State Police where Trooper Bittner spoke with the Defendant while police and ambulance personnel responded to Defendant's home.
>
> Defendant informed Trooper Bittner that he and Robert Steward had been fighting, that Defendant was injured, that Defendant feared for his safety and

therefor shot Mr. Stewart. Defendant complained to Trooper Bittner of pain in his ribs and difficulty breathing. Twice during the conversation, Defendant ceased talking to Trooper Bittner for short periods of time. Upon arrival of the Pennsylvania State Police, defendant, was told to leave his residence. He complied, was taken into police custody and transported to Butler Memorial Hospital.

Emergency room personnel treated Defendant for superficial scratches to the left side of his neck, complaints of rib pain and complaints of difficulty breathing. A physical exam found no independent confirmation of rib injury or difficulty breathing. Thereafter Defendant was released to the custody of the Pennsylvania State Police.

At the hospital and at the Butler Police Barracks, Defendant was interrogated by the Pennsylvania State Police regarding the whereabouts of the gun used to shoot Mr. Stewart, and the events leading to Defendant's shooting of Mr. Stewart. In response to questions regarding the whereabouts of the gun used to shoot Mr. Stewart, Defendant claimed to have hidden it in a heating duct in his residence. Two searches failed to produce the gun. Ultimately, Defendant admitted to hiding the gun in the storage trailer on his property where it was later recovered by the police. In response to questions regarding the events leading to Defendant's shooting of Mr. Stewart, Defendant provided multiple statements. Each of Defendant's statements differed in contend, and each differed from the testimony Defendant gave at trial.

At the time of his death, Mr. Stewart had a blood alcohol content of .298. A toxicology test performed on the Defendant showed that the only chemical in Defendant's system was aspirin.[14]

The first and third issues which the petitioner properly raises here concern the sufficiency of the evidence to support a first degree murder conviction. Pennsylvania defines first degree murder as "a criminal homicide ... committed by an intentional killing." 18 Pa.C.S.A. 2502(a). To establish these elements, the Commonwealth must prove a killing, with specific intent to kill, with malice and without lawful justification. Com. v. Gribble, 703 A.2d 426 (Pa.1997), cert. denied 525 U.S. 1005 (1998). Malice or the specific intent to kill may be demonstrated by

---

[14] See: exhibit 12 to the answer.

evidence such as the "use of a deadly weapon on a vital part of the victim's body." Id, at 431. However, where the homicide occurs as a result of a sudden intense passion, the act constitutes voluntary manslaughter, and not murder. Id. at 434.[15]

While, as the petitioner argues, voluntary manslaughter and not first degree murder might have been a more appropriate result, the record conclusively demonstrates that the petitioner specifically rejected the right to have the jury consider voluntary manslaughter and only permitted them to consider first or third degree murder.[16] As the Superior Court determined:

> The Commonwealth presented the following evidence at trial. First, after the incident, Appellant told doctors and paramedics that the victim choked him, punched him in the head, and broke his ribs during an altercation. Medical personnel could not, however, objectively verify any of Appellant's complaints except for a few superficial scratches... Second, Appellant lied to the police about the location of the gun used in the incident ... [O]ur Supreme Court held that "the fabrication of false and contradictory statements by an accused are evidence from which a jury may infer that they were made with an intent to mislead the police or other authorities, or to establish an alibi or innocence, and hence are indicatory of guilt."... Thus, Appellant's inconsistent accounts tend to negate a finding of self-defense. Third, the trial court noted that the Commonwealth presented evidence that no seat cushions were out of place in the area of the apartment where the altercation allegedly took place... Finally, it is undisputed that the victim was unarmed at the time of the shooting.[17]

When reviewing a claim of insufficient evidence to support a conviction, a federal habeas court must determine whether any rational fact finder could determine guilt beyond a reasonable

---

[15] It is provided in 18 Pa.C.S.A. 2503(a) that one "who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation ..."

[16] See: TT. 1231-1242 wherein against the advise of counsel and in his desire to avoid a compromise verdict, the petitioner elected to not have the charge of voluntary manslaughter submitted to the jury.

[17] See: Exhibit 12 to the answer at p. 9.

doubt. Jackson v. Virginia, 443 U.S. 307 (1979). In the present case, there clearly is evidence in the record, which if accepted by the jury, supports a conviction of first degree murder. That the petitioner voluntarily elected to not have a lesser, and perhaps more appropriate, offense submitted to the jury was a tactical decision on his part which unfortunately for him resulted in the present conviction. We cannot say as a matter of law, that the verdict is not sustainable and for this reason, the petitioner's claim of insufficient evidence to support his conviction must fail.

The final issues which may properly be before this court concerns the allegations of ineffective assistance of counsel for failing to present available witnesses and favorable evidence in the petitioner's behalf. However, this issue arose in the post-conviction court which concluded that the issue had two components, the ineffectiveness of trial counsel which the Superior Court concluded was waived due to the petitioner's failure to raise that issue appropriately, and his claim of the alleged ineffectiveness of post-conviction counsel.[18] The Superior court concluded that the first component was waived, and thus it is procedurally defaulted here, and as a matter of law, the issue of ineffectiveness of post-conviction counsel is not properly considered by a federal habeas court. 28 U.S.C. 2254(e)(2); Taylor v. Hora, 2007 WL 2728668 (3d Cir. September 20, 2007).

Accordingly, because the issues before this Court do not provide a basis for habeas corpus relief, it is recommended that the petition of Steven A. Gardner for a writ of habeas corpus be dismissed and that a certificate of appealability be denied because no viable constitutional issues exists upon which a reasonable jurist could conclude that there is a basis for appeal.

---

[18] See: Exhibit 34 to the answer at p.4.

Within thirteen (13) days after being served, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

|  |  |
|---|---|
|  | Respectfully submitted,<br>s/Robert C. Mitchell, |
| Entered: October 16, 2007 | United States Magistrate Judge |